IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-15-0267-TUC-RCC (DTF) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Federico Gonzalez-Hernandez, | |
| Defendant. | |

Pending before the Court is Defendant Federico Gonzalez-Hernandez's Motion to Dismiss Indictment. (Doc. 14.) Defendant filed a supplement and the government filed a response. (Docs. 26, 28.) This matter came before Magistrate Judge Ferraro for a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. An evidentiary hearing was held on March 26, 2015, after which the matter was taken under advisement. The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion to Dismiss.

## I. FACTUAL BACKGROUND

On January 12, 2015, Border Patrol agents spotted Defendant, Federico Gonzalez-Hernandez, traveling on foot through Ephraim Canyon, near Nogales, Arizona. At approximately 11:00 p.m., Border Patrol Agent Justin Pinkerton responded to the area where Defendant had been observed and found Defendant. The government alleges Defendant was hiding in thick brush and Agent Pinkerton identified himself as a Border Patrol agent. According to the government's version of the facts, Defendant quickly stood

up and swung his hands and arms at Agent Pinkerton. Defendant struck Agent Pinkerton in the face, causing a small laceration and bruising. Defendant then forcibly pushed Agent Pinkerton in the chest with both of his arms and ran away. Agent Pinkerton followed Defendant and heard tree branches breaking and Defendant scream as if in pain as he ran through the thick brush. According to Defendant's version of the facts, he acted in self-defense to protect himself from Agent Pinkerton, who inflicted a head wound on Defendant.

Defendant was arrested and charged by complaint with assault on a federal officer. (Doc. 1). Thereafter, on February 11, 2015, a federal grand jury returned a one-count indictment charging Defendant with Assault on a Federal Officer, in violation of Title 18, United States Code, Section 111(a)(1). (Doc. 5.)

At the motions hearing, Border Patrol Agent Travis Peterson testified that, after he arrived at the scene, Agent Pinkerton directed him to take two photographs with his mobile telephone depicting blood on a branch. (RT at 14, 21-22.)[1] The branch was close to the ground. (RT at 22.) Agent Peterson testified that he did not take any photographs of Defendant in the field. (RT at 28.) From the scene, he went to the hospital where Defendant had been taken and took three photographs with his mobile phone depicting Defendant's injuries. (RT at 14-15; Exs. 1-3). Defendant testified that Agent Peterson took a picture of him in the field, after he had been cleaned up by another agent. (RT 33-34.) Agent Peterson testified that he sent the three pictures of Defendant to his supervisor that evening as requested. (RT at 19.) He also preserved the other two pictures taken at the scene on his mobile phone. (RT at 19, 25.)

The affidavit supporting the complaint indicated that the incident was observed by a camera operator. Hence, on January 22, 2015, defense counsel formally requested that

---

[1] "RT" refers to the Reporter's Transcript of the March 26, 2015 evidentiary hearing. (Doc. 34.)

1 the government preserve that "footage" and provide it in disclosure. (Ex. 20.) It has been
2 disclosed to the defense. (RT at 9.)

3 At the motions hearing, Agent Peterson testified that, on February 9, he
4 accidentally left his mobile phone in a pocket and washed the clothing. (RT at 18-19.) At
5 the time, the mobile phone still had the photographs preserved on the device and they
6 were inadvertently destroyed when the phone was run through the washing machine and
7 rendered inoperable. (RT at 19, 27-28.)

8 Thereafter, on March 5, 2015, defense counsel requested the photographs taken by
9 Agent Peterson and described in discovery reports. According to government counsel, on
10 March 12, 2015, she learned that the photographs taken at the scene were lost due to the
11 cellular phone being broken. Government counsel then advised the defense attorney that
12 they were lost. According to the government's proffer, on March 14, 2015, Agent
13 Pinkerton returned to the incident location and took photographs of the area. These were
14 turned over to defense counsel in discovery. (Exs. 8-16.)

## II. DISCUSSION

16 In *California v. Trombetta* 467 U.S. 479, 489 (1984), the Supreme Court held that
17 the government violates the due process rights of a defendant if unavailable evidence
18 "possess[ed] exculpatory value that was apparent before the evidence was destroyed, and
19 [is] of such a nature that the defendant would be unable to obtain comparable evidence by
20 other reasonably available means." *See also United States v. Zaragoza-Moreira*, No. 13-
21 50506, 2015 WL 1219535, at *3 (9th Cir. March 18, 2015). Moreover, the Supreme
22 Court held in *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988), that the defendant must
23 demonstrate the government acted in bad faith in failing to preserve such evidence.

24 Defendant claims his due process rights were violated by the loss of the two
25 photographs depicting blood on a branch as well as the picture he asserts was taken of his
26 injury at the scene. As to a possible picture of him taken in the field, Defendant argues
27 the value of these photographs was readily apparent because he is asserting self-defense.
28 He contends the officers were aware of this defense at the time they apprehended him,

1 because they documented him stating, "don't hit me." Even if a photograph from the
2 scene was destroyed, there are other photographs that document the injury Defendant
3 sustained that night. He testified that he had been "cleaned up" prior to the photograph,
4 although he was still bleeding. (RT at 34-35.) In the photographs at the hospital, the
5 wound had not been treated, although much of the blood had been cleaned off his face.
6 (Exs. 1-3, RT at 29.) Agent Peterson testified the wound was in the same condition as it
7 had been in the field. (RT at 29.) Thus, Defendant is in possession of comparable
8 evidence and there was no due process violation related to the photo he contends was
9 taken of him at the scene.

10 Defendant argues the two photographs of the branch taken at the time of the incident would have corroborated his version of the altercation. Specifically, he contends that the photographs would have demonstrated that he was not injured by the branch depicted in the photograph. Rather, he was injured by Agent Peterson striking him, and the blood got on the low-lying branch when he was tackled to the ground. The government has not asserted the injury came from a particular branch, only that it is possible Defendant's injury was caused by a branch. Further, there is no question Defendant sustained an injury and it is possible that blood could splatter randomly in that setting. Nevertheless, even if the photographs would have provided some evidence for the defense, the exculpatory value was not apparent before the photographs were destroyed. *See Zaragoza-Moreira*, 2015 WL 1219535, at *4. (bad faith analysis looks first at whether the exculpatory value of the evidence was known by the government at the time of its destruction, because without that there can be no bad faith in the destruction).

23 Relying upon *Zaragoza-Moreira*, Defendant argues that the government acted in bad faith because they had knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed. Defense counsel points to his letter of January 22, 2015, requesting preservation of "footage" from the camera operator as notice to the government. (Ex. 20.) The video camera footage referenced in this letter was preserved and turned over to defense counsel. Defense counsel also notes that these photographs

1    were referenced in discovery reports and no steps were taken to preserve them. While it is
2    true that the two scene photographs were not forwarded to a supervisor as were the three
3    depicting Defendant's injuries, the evidence is undisputed that Agent Peterson had
4    preserved the photographs on his mobile phone. Had the phone not been accidently
5    broken, the photographs would have been available. In *Zaragoza-Moreira*, at the time
6    defense counsel requested preservation of the relevant video footage, it was still in
7    existence. 2015 WL 1219535, at *2-3. In contrast, on March 5, when Defendant's
8    attorney requested the photographs taken by Agent Peterson, the phone had already been
9    damaged and the photographs lost. Defendant has failed to demonstrate the exculpatory
10   value of the photographs was apparent to any government agent before they were
11   destroyed.

12   Moreover, the facts here are much different than those presented in *Zaragoza-
13   Moreira*. In that case, the defendant was charged with bringing drugs through a port of
14   entry and she asserted a duress defense. During her initial interview by a government
15   agent, the defendant asserted that she had not wanted to commit the offense and she
16   reiterated numerous times that she had made herself obvious while in the pedestrian line
17   at the port of entry because she was trying to get caught. 2015 WL 1219535, at *1-2, 5.
18   The Ninth Circuit found that, because during an hour-long interview the defendant made
19   numerous references to her conduct while in line at the port of entry, the government
20   agents should have been alert to the value of the port of entry video. Despite that, the
21   government made no effort to preserve that evidence. Here, the evidence was preserved
22   and inadvertently lost. The defense has not shown the government acted in bad faith
23   when it lost the evidence.

24   Finally, unlike *Zaragoza-Moreira*, there is comparable evidence reasonably
25   available to Defendant to establish his defense. Agents Peterson, Pinkerton, and Jesus
26   Diaz were at the scene and can be examined regarding their recollection of the content of
27   the photographs. In addition, about two months after the altercation, the scene was more
28   extensively photographed by Agent Pinkerton. Those photographs were provided to the

defense. (Exs. 8-16.) Also, the agents preserved in their reports Defendant's statement made during the altercation – "don't hit me" – that is more corroborative of his defense than blood splatter on a branch.

Defendant has failed to establish any of the elements for a due process violation based on unavailable evidence. He has not demonstrated that the exculpatory value was apparent before its destruction, that there is not comparable evidence reasonably available to him, or that the government acted in bad faith. Thus, the unavailability of these photographs is not a ground to dismiss the indictment.

### III. RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Dismiss (Doc. 14).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 30th day of March, 2015.

D. Thomas Ferraro
United States Magistrate Judge